on behalf of Jermel Lewis I would request three minutes rebuttal. How many minutes? Three minutes. If I may. Yes. Thank you. Your Honour, this case poses a very unusual, Your Honour, as I should say, a very unusual set of circumstances, in that my client was actually acquitted of the charge that became the basis upon which the government came back. We are aware of how his code of fence got a break. But I think it's significant. I don't think we can ignore that in terms of the government's argument regarding harmless error. I think it's essential in evaluating the prejudice to my client in this case, and I think that's really the ultimate question is whether or not it affects the integrity and judicial process in this particular case. And it certainly does. When you say that, are you arguing plain error review? Are you arguing harmless error? Are you arguing that harmless error doesn't apply? I'm arguing, that's a very good question. What I'm arguing is that harmless error does not apply in this case. What does apply? What applies is the paradigm of due process, that this is essentially a structural error. And more fundamentally, I don't think with the cases following Apprendi. How is it structural? I mean, Apprendi isn't structural. How can this be structural? Well, there's a fundamental difference, I believe, in this particular case, and that is we have essentially two different paradigms, Your Honor. Could you keep your voice up? Yeah, I'm sorry. Two different paradigms. One is the paradigm that the courts have seemed to adopt, which is that on sentencing, we look at the record and we'll examine whether or not this is, in fact, harmless error. And if the facts support what the conclusion the jury probably would come to, we're going to allow those facts to substitute for the jury's judgment. And there's a sense of efficiency about that evaluation, when you have many claims, numerous claims, coming before the court, and especially post Apprendi. But what we've seen is an evolution, or I think an enlightenment, by the court regarding the fundamental impact of that harmless error analysis on cases where someone's liberty and interest is at stake. In this case... Hold on, hold on. Are you talking about structural right now, right? I mean, you have to admit, it's a very small window, and you cited our recent Ornheimer case where you looked pretty reluctant to add on to that very small category of cases. Why is this case, why should this case be, you know, fit in that window? Why should we recognize a new exception, I guess? Well, I see that, Your Honor, is basically based on the facts and the posture in this particular case, which is very unusual. And I go back to the fundamental question of fairness. My client was acquitted of the intimidation charge. It went up on appeal on a variety of issues before this court. It eventually was sent back for the co-defendants on the question of whether or not the evidence was sufficient on those two intimidation charges for which they were convicted. It went up based on a preservation of the, of the, a lien argument. That's not the basis on which we decide whether something is structural. Are you familiar with the Supreme Court's opinion in Washington v. Rickuenko, R-E-C-U-E-N-C-O, where the court, Supreme Court held failure to submit a sentencing factor to the jury, like failure to submit an element to the jury, is not structural error. Is that pretty clear, what we have here, the failure to submit an element to the jury? It's not just, well, Your Honor, with all due respect, it's not just a failure, because in this case, I think we have a chasm that needs to be breached, which is, in this case, we have more than just a failure. We have something that was uncharged. It wasn't just a failure to submit to the jury. It was never charged. It was never charged, and I think there's an integrity that we must recognize in the system. In this case, although it wasn't charged, you have the flip side of what we normally have. It was proven. You could argue it was proven. There was evidence, however you categorize that evidence, there was evidence at trial that your client, Mr. Lewis, brandished a gun. And, Your Honor, that's a very good point, except that, again, goes back to my fundamental question, which is whether or not we can substitute the judgment of a jury on a crime that was never charged, never proven, beyond a reasonable doubt, never instructed upon, simply under the harmless error analysis. Let me ask you this question. Where was the error? Was it at trial? Was it at sentencing? Or was it both? I think that it comes from the fundamental, I guess, reach and stretch of due process. It's more than just an error. It's a fundamental due process question of whether or not anyone in this country should ever be... No, but answer the question. Where was the... What would you like to have happened here for your client? I would like the government to have conceded that a lien applies to him, based on the facts. No, no, no, no, no, no. He was sentenced, and I don't mean to point you, he was sentenced to a seven-year minimum. He was. What would you like to have happened here? We demand for him to essentially get the benefit and protections of a lien and have... And to be re-sentenced with a two-year minimum. Isn't that what you want? I want a re-sentence on the five-year mandatory minimum and not the seven-year minimum. I mean five-year minimum. Yes, correct. Okay. That's correct. All right. So what is the error? The error here, Your Honor, is the fact that... Is it trial or sentencing? Which is the error? The error clearly is both, because it's due process throughout. I'm trying to help you here. Anna doesn't put that quickly. I'm trying to help you here. It's trial. Isn't it sentencing? Well, it's both. Well, it's sentencing in the sense that the government has asked for... It's sentencing to something that the jury... Correct. ...find in that lane. Correct. It was remanded so that... I mean, the words are just... So that he could be sentenced in accordance with the jury's verdict. Correct. Don't you want this to be a sentencing error? If... In terms of the remedy and what you want... In terms of the remedy. In terms of the... You don't want it to go back and have the jury decide it. No. No. That's not what I'm asking. That's correct. What I'm asking for is essentially... You're absolutely correct, Your Honor. What I'm asking for is essentially the notion of due process to pierce this idea or this application of the harmless error doctrine on every single case. This is a unique case. Let me go back and ask that question. If we apply harmless error here to this error in sentencing, was it harmless or harmful? It was harmful to my client. Okay. Absolutely. Okay, it was. Because he was sentenced to a seven-year minimum, not a five-year minimum. Correct. So harmless error test, you trump the harmless error test, don't you? I think there's that second level argument. But I don't want to abandon... You're absolutely correct, Your Honor. But I don't want to abandon the notion that underlying that is my client's liberty interest. Let me ask you... I'm sorry. Let me get to that question. But I read again your briefs this morning. First of all, you didn't file an initial brief... Correct. ...on behalf of Mr. Lewis. But looking at that brief, looking at your reply brief, you never even raised the question that this was harmful. And it wasn't harmless error. That was never even raised. You put all your eggs in the structural basket. And maybe that was my tremendous oversight. Because I guess my fundamental concern about this particular application, allegedly uniform application by the government of a harmless error doctrine, works to tremendous harm of my client. You did raise due process. I did. And my argument, you're absolutely correct, my argument is that the due process clause trumps any judicial appellate remedy that would make it more efficient to dispose of these cases. And that's what I see the government's argument has been. Essentially, we're going to apply the harmless error doctrine in this particular case because it's been efficient and because it essentially has been established by precedence before to, in an economical manner, dispose of these cases on appeal. But the government concedes that they can't make that argument in resentencing for the co-defendants. So the irony is that the co-defendants who are more responsible overall for the scheme charged in the indictment, that is the intimidation as well as the Hobbs Act robbery, now get the benefit of a lead simply because the posture is such that my client was not charged, convicted or he was not convicted and didn't suffer the consequence of an obstruction enhancement which the court But that is, that's a sad fact. And that's exactly what I'm saying. That's harmful. So adopting your Honor's analysis, which I guess I had to be led by the nose towards and I apologize, that's the harm here. And I see that as affecting the integrity of the judicial process fundamentally. Your client is treated differently than the other two. Differently in a fundamental way that deprives him of his liberty interest and essentially gives those two a break that my client should have gotten from the beginning. In other words, he should, the government should have conceded this should go back because the fairness and the justice of it would send him back and be sentenced like the other two. But doing that would mean that every Elaine case would have to go back. I disagree. See, that's where I disagree. I think this is so unusual. This is such an unusual case and it allows this court to reclaim essentially the fundamental notion of fairness in this particular case. What makes you say that? Because it is harmful. It's not harmful. What makes you say this is different? Everybody who has an Elaine claim, and believe me, there are a lot of people, we get motions every week, at least two or three of them talk about Elaine. A lot of people say, hey, I got an Elaine claim. I think what this does, because it's such an unusual posture, it sets the parameters wrong. Because you had the two defendants. Because the two defendants in this particular case are You're really trying to hang your hat off. Well, because I think in this case it is harmful. So if we set the parameters for the government to essentially say that we're not rubber-stamping every single case that comes back based on the doctrine of harmless error, what we say is, wait a minute, government. In those cases where it is so exceptional, as in this one, we're going to set parameters and limit your power to do so. We're reclaiming essentially, as this court I believe should do, we're reclaiming this idea of due process, even if you don't want to establish it on due process grounds. But the notion that my client's liberty interest is in jeopardy because of this anomaly in this case seems to be fundamentally unfair. And it goes back to my argument that the fundamental fairness But isn't the point that he should be sentenced to what he should be sentenced to? And if he should be sentenced to a five-year minimum because the jury didn't find it, then he should be sentenced to a seven-year because, you know, if you adopt the idea that you go back to what the jury could have found, which I thought was going to be your due process issue. But we got a sentence based upon, you know, we got blinders on, based upon his case. That is absolutely correct. And I think in this case, my argument holds true. That essentially, without evaluating his particular case and saying that these are the parameters for the government in the future, this is an anomaly. So I'm not saying you're setting a precedent that opened up the floodgates for every lien claim. It doesn't. It really doesn't. I mean, anything that's pending. Now, we've gotten motions for, you know, they didn't find brandishing in my case. I've been in prison for five years. Well, until a lien's been held to be retroactively applied, you know, those are out the window. But you're just lucky yours was in the pipeline, I guess. I'm just hoping that this court sees the wisdom in evaluating the harmless error doctrine if that is, in fact, what this court is going to do in evaluating whether or not it applies in this case in the context of all three defendants. Can I ask you a question? Yes, Your Honor. The indictment did charge, albeit in the Hobbs Act count, and it's a quote, that they committed their acts by actual threatened force by pointing firearms at the customers and employees. What effect does that have on your claim? Very good question. Is that brandishing? Very good question. No, it has no effect at all because, again, it goes back to the question of whether or not the jury could pass on that, whether the jury could decide or did decide on that. And they didn't. They didn't have that opportunity. But they did decide on it. They didn't. They decided. The judge decided whether it was brandishing and sentencing. No, but the jury did find those facts because they found all three defendants guilty of that count of the Hobbs Act. Well, very good point, except here's the problem, Your Honor. And in my experience, this has become very difficult. I've tried Hobbs Act cases where the gun is alleged to have been in the hands of my client. He's found not guilty of the gun, guilty of the robbery on a conspiracy claim. So it's hard to go into the minds of the jury. And I don't think we need to go there here. I think what we need to do is evaluate his case in the context of the other two. Because those who are more culpable in the overall scheme, which includes the intimidation, are now getting the benefit of a lien and my client is not. And the fundamental fairness factor here, I think, can't be overlooked. I think it's essential to the court's analysis. All right. We'll hear from you on rebuttal. Thank you. Good afternoon. May I please support Robert Salzman on behalf of the government? Your Honor, I think it's important here to specify exactly what the issues are because they keep changing. Based on the brief that was originally submitted by Mr. Shavers and based on the argument that my friend, Mr. Hetznecker, just presented, the defense brief by Mr. Shavers was very careful and very specific because I think it rightly recognized how the defense is boxed in by various Supreme Court decisions over the years. There are two errors that took place here. There was a lien error. We now know that because a lien has been decided. And the two errors were, number one, the indictment did not charge the brandishing element in the 924C count. And number two, the jury did not pass on it. Both of those errors came to fruition at sentencing, if I may answer Judge Rendell's question. It's a sentencing error. The courts held that after Apprendi. I think McCulligan was the Third Circuit case probably around 2001 that said that. What we're dealing with here is sentencing error. And that's why a defendant can always preserve an objection to Apprendi or now a lien by making the objection at sentencing. They don't have to get up at trial and say, oh, the prosecutor forgot to charge me with this. They better not. Right. It would be foolish. And so the error takes place at sentencing. Now our position, what this comes down to, is that it's subject to harmless error review. The second error here, what we'll call the trial jury error, where the trial jury doesn't pass on brandishing, that was not argued in the original brief, even though I think Mr. Hetznegger just argued it now. And I think the reason it wasn't argued in the brief is because that is Washington v. Requenco. That is dead. Washington v. Requenco says failure to submit a sentencing element to a jury is subject to harmless error review. And then the second reason, as I understood the Shavers brief, which is what started all this, that they didn't argue harmless error is because you can't win. I mean, these people obviously brandished guns. There was no way this robbery took place unless they were brandishing guns. And the way harmless error applies here, we're taught this by the Nader decision, the Nader in the Supreme Court, that says if you fail to give an element to a jury, it's harmless if the evidence was overwhelming and undisputed. And here it was overwhelming and undisputed. But you did say it's a sentencing error, correct? Correct. So how does that error get remedied? What it's subject to is harmless error review. Okay. And how was the error here harmless? It was harmless because the evidence of brandishing was overwhelming and undisputed. But wait, wait, wait. It's a sentencing error. How do you correct the error in sentencing? You resentence, like they did in Allain, you remanded for resentencing in accordance with the jury verdict. Isn't that why Allain didn't even need to discuss harmless error? Because clearly he was sentenced to a seven-year minimum and according to the jury's verdict, the five-year minimum applied. Apprendi didn't address it because it simply remanded its case. No, Allain. Allain. Remanded its case for further proceedings. But now that we're on direct... But it said specifically, we vacate with respect to his sentence and his conviction and remand the case for resentencing consistent with the jury's verdict. And doesn't that mean it went back and applied the five-year instead of the seven-year? The government did not argue harmless error in the Allain case. The government is arguing harmless error here. Okay, but how is the error not harmless? I mean, how is the error not harmful if the jury verdict would have required a seven-year minimum and he was sentenced to a five-year minimum and he was sentenced to a seven-year minimum? How is that not, you know, obviously, as a matter of law, harmful? Well, here's why. Every error is subject to review for harmless error or plain error, depending on whether there's an objection, unless it's structural. And I'll come back to that. This is not structural. So every error is subject to harmless error review. Your Honor wrote the leading decision, as you know, in the Adams case in this circuit, that says virtually every error is subject to harmless error review. I'm not arguing that. I'm saying this is harmless error, but I don't know how you get around the fact that this was harmful because he was sentenced to the seven rather than the five. And here's why. The type of error that we're dealing with here, which is not giving an element to a jury. Here, it's a sentencing element. In other cases, it's materiality or what have you. The Supreme Court has defined what harmless error is in this context. An error is harmless if the government shows, beyond a reasonable doubt, that the jury, or in this case the grand jury, had it been asked to pass on this element, would have done so. That makes the error harmless. But that runs, that just totally upends everything that Apprendi and Elaine and everything else stand for. That we, as a court of appeals and review, suddenly wave a wand and say, oh, the jury would have obviously found it, so this is absolutely fine that he was sentenced to a seven-year term. That's not what Elaine should then have said. Again, the government didn't present the argument because it wanted to focus on the law. But, Your Honor, what you just said is the holding of the Third Circuit sitting in bank in the Vasquez case. Well, and guess who? And I made the exact same argument in the dissent in that case that I'm making now. I understand, Your Honor. That argument is just the position. I understand, Your Honor, and we're all consistent in our positions. But the rule of this circuit in Vasquez, and actually every circuit, with dissenters, such as Your Honor, but in the end, all the circuits were unanimous in applying and reaching the same harmless error argument. The most important case here, actually, the case that also defeats Your Honor's suggestion, as well as the structural error suggestion, is Cotton, United States v. Cotton, which came out a year after Vasquez. And this court didn't have the benefit of it at the time it decided Vasquez. But Cotton, in fact, the introduction of it says we're here to decide whether the omission from a federal indictment of a fact increasing a statutory maximum sentence means the sentence has to be vacated. Now, they apply plain error review because there was no objection in the trial court, but as we know, it's just the other side of the same coin. Now, Cotton is identical to this case factually. Cotton, you have defendants who were only charged with a detectable amount of cocaine. Under the statute, that means a 20-year maximum. They go to sentencing before appending, and they're sentenced to 30 years. And they come in and make the exact same argument that's being presented here. You can't do that. The quantity wasn't in the indictment. The quantity would have increased my maximum. It wasn't there. You're sentencing me for a crime that I wasn't charged with. Mr. Zosman, it seems to me that there's a lot in this argument that wasn't briefed by either side. And as I look at this, you now acknowledge that this was a sentencing error. An error at sentencing. What's the record show at sentencing as to brandishment? Because don't you really have to look? I mean, we now have almost 10 years of post-Booker jurisprudence. Many cases of which come out of your office. I mean, don't you have to look at what evidence the court had before it at sentencing? We do. To determine whether or not procedurally and substantively gave the right sentence? We do. And I think we did point out in our brief, I hope, that that's very important here. Because at sentencing they did not dispute brandishing. And it wasn't irrelevant to not dispute it. Because remember we were operating under Harris. Harris said you don't have to charge the mandatory minimum. The judge can find it at sentencing. That gets reversed in a lane. But you still have to prove it. You still have to have a judge find brandishing in order to say your mandatory is 7 years instead of 5 years. You still have to present evidence to the judge. Was anything presented? Well, nothing was presented because it was not disputed. And that's the important point. It's that here we have a mandatory sentence that was imposed on the basis of a conclusion that was never even disputed. This is what the Supreme Court was talking about. You say it wasn't disputed. But at the same time, it also wasn't tried. And the issue of brandishing per se, was not put before the jury in an indictment. It wasn't submitted to the jury in the jury instructions. And the jury didn't return a verdict based on that section of 924 that carried brandishing. So, when you say it wasn't disputed, is that enough to say that it was supported? Well, in addition, Your Honor, it was supported because we were relying on the trial record. This was a case in which the government presented the testimony of the witnesses who said they all pointed guns at us. All three men had guns. A real gun was actually recovered. So, there was a lot of credibility to that report. The pre-sentence report on the basis of that evidence found that guns were brandished and recommended the 7-year mandatory. So, what happens then in every case is we go to sentencing and we see whether there's a dispute or not. Had they stood up and said Your Honor, I don't think there was proof of brandishing. The prosecutor would have stood up and said, look at the record. You've heard all the evidence and on the basis of that evidence we ask you to find it. We don't say that as to all sorts of sentencing facts when we're not called upon to do so. But yes, this was absolutely squarely supported by the record and to such an extent that the defense did not do what it could have done. It could have stood up to Judge Joyner and said, even you shouldn't apply these extra two years because the evidence was insufficient. Nobody could say that on this record. That's what makes it harmless error. That's the heart of it. It's harmless because if the error had not been made, if we'd known about Elaine, if we had a crystal ball to know that we should have charged it, we can say beyond a reasonable doubt, that grand jury would have returned it and that trial jury would have found it. That's what Loquenco says. And I think it's very notable what Your Honor mentioned, that in the very careful brief that was prepared on behalf of Mr. Shavers that Mr. Lewis is relying on, they never argued harmfulness. They put all their chips on structural error. Now you only do that when you can't win a harmlessness argument. You say, well this isn't amenable to harmless or plain error review at all. That is why the Shavers brief is written the way it is. It's not, Your Honor, I think that things weren't briefed. I think they were very carefully thought through and we responded accordingly. And so again with regard to the trial error, with regard to the trial error, Washington versus Loquenco and Nader before it are dispositive. And Cotton. Excuse me? And Cotton as well. That if you have an error, but if you have an element that's not presented to a trial jury, but the evidence is overwhelming and undisputed, that is harmless error and there's no remedy. Then why do we even bother having Apprendi and Elaine and those cases if really which stand on the principle of due process when really reviewing courts are just going to run roughshod over the trial, the right to have that kind of element proven to the jury. Well I don't think so, Your Honor. We've run into this situation. We've had this rash as you know since 2000 of the Supreme Court changing the law every year or two. And whenever that happens we have a rash of these decisions where we have to address standards on appeal, standards on habeas as to retroactivity. That obviously is not what the Supreme Court is primarily focused on. It's focused on the law going forward. For the next 20, 50, 100 years, we'll be charging elements that increase the mandatory minimum. We're in this interim right now where we have to deal with the cases in the pipeline. But to correct it, you would think they would do what Elaine did and say, listen, the jury found X and that's the basis on which you should be sentenced. And I think if the government had decided to argue harmless error did, which it didn't, it put its chips on Harris. But if the government had argued harmless error, the Supreme Court would have gotten it affirmed. The Supreme Court would have been compelled to apply its precedent in Nader and Raquenco and these other cases because they're directly on point. The question is, this is a rule of appellate procedure. There is no right to a remedy where the error is harmless and that's the case here. So as I said, if we go back to the brief, if we hold the defense here to what was briefed, what was briefed was omission from an indictment is structural error. Everything else has really been boxed out by these Supreme Court decisions. Maybe you could just bear with us. Your adversary came out of the box saying, hey, look, there's a problem with the integrity of the proceedings because the other two got something that my client didn't get. How do you respond to that? How does that fit into our analysis? I don't think it does. I think it is. There's no question I have a little bit to say about this. It's unfortunate that Mr. Lewis is It's no less unfortunate that we have thousands of inmates out there, as your honors are referring to, who are on both sides of this line. We've learned very clearly in the last ten years that when the Supreme Court and Congress and the Fair Sentencing Act and any body changes the law, a line gets drawn. Some people benefit and some people don't. There are thousands of inmates as a result of all of these decisions and new statutes that are on one side of the line or the other. But in the very same case... Sure, so the oddity here is it's in the same case. But there's no due process right. There is a due process right that Mr. Hesniker is referring to, to have something charged against you in the indictment. And we say that's harmless error here. But there's no due process right to be treated the same as your co-defendant or to get the same sentence as your co-defendant. I wish I could stand here and say I don't get any great pleasure in saying treat Mr. Lewis as behind the eight ball. I wish I could stand here and say what the heck. Give him let him have another shot. By the way he wouldn't necessarily get two years off. The judge could still impose the same sentence but give him a shot. Love to say it. But we all know what would happen which is all those inmates who are filing the petitions that Judge Fischer is seeing every week are going to say the appellate chief just said what the heck. Let's let them all have it. We're between a rock and a hard place. We have to apply the doctrine of the law which is you look at each case individually and decide where do you fall and how does it apply. Now I can say also that I don't lose sleep over this one. I mean there are troubling things that we face because the fact of the matter is this was harmless this is what it gets back to. Had we had a lane, had the Supreme Court not given us Harris and then reversed itself ten years later and we had a lane Mr. Lewis would have been charged with brandishing the grand jury did find it. It just put it in the other count because that's where it was drafted the jury would have found it. Does that have analytical significance here? Oh sure. Because again the question is harmless error if the grand jury had been asked the question would they have found it? Normally we say and this is what Johnson and Nader say is look at whether the evidence is overwhelming and undisputed. We have more here they found it. It's there. It's a finding of the grand jury in that count and we all know that the only reason it's not in the 924C count is because 924C counts didn't need to be drafted that way under the authority of the U.S. Supreme Court. So yes it's very powerful. So on the specific issue that's raised in the brief this is not structural error. Cotton shows us this is not structural error because they couldn't have reached the decision they did in cotton if it had been structural error. And it's even if you go beyond that and expand the issues beyond what's in the brief this is harmless beyond a reasonable doubt. Thank you very much. Thank you. I'd like to initially address one point that Mr. Zosmer made regarding both Vasquez and Cotton. United States v. Davis is a case that this court decided in 2005 and in that particular case the question one of the questions was whether or not the sentencing calculus was governed by a guideline framework that required mandatory imposition of that guideline whether or not it should be sent back for resentencing based on that and one of the things that the court in Davis said this court in Davis said in referencing Vasquez in a footnote the court specifically limited the scope of Vasquez and stated a case in which this case in which the government heavily relies the court stated we did not have the benefit of Booker when deciding Vasquez nor do we hold that an apprendee violation in its sentencing will never affect the defendant's substantial rights rather we held the substantial rights of the individual defendant in that case was not affected. Additionally Cotton Good question on that point can a panel of this court limit Vasquez like that? Absolutely I think this court because Cotton allows for it to do so and I'm going to cite If Vasquez held to the contrary I would question whether a panel of this court could subsequently do that even with Booker interceding on this law. You make a very good point but the footnote recognizes I think in a significant way it really is almost like a blaring trumpet clarion call that in fact Vasquez is limited based on this court's discretion. One of the things that we're ignoring is the government has the choice to do this. The government is saying well they're hiding behind a harmless error doctrine and saying well it's too bad for Mr. Lewis but the reality is in this particular context the anomaly is the more innocent man gets the more time. How is that not a fundamental judicial a fundamental issue due process issue that affects the integrity and fairness of the judicial system? It does and Cotton says significantly. The court did not address and again this is very important with respect to Mr. Zosmer's argument the court did not address whether defendants substantial rights were affected because the error did not seriously affect the fairness integrity or public reputation of the judicial proceedings That is essentially what I'm talking about with respect to setting the floodgates. This is not a question of floodgates. This is a question of limiting the government's power to say hide behind the doctrine of harmless error and say you know what the injustice in this case with all due respect to Mr. Zosmer I'm not losing sleep over it he says because the injustice in this case is what it is. I don't think that's the mandate of this court. Let me switch a little bit Mr. Zosmer points out at the sentencing hearing that there was no there was no objection. There was no question about the brandishing. It was relevant then too even if just to the district judge isn't that significant? It's only significant in the belief if this court believes that harmless error is the applicable doctrine in this case. It's not significant with respect to the argument made that there's actually harm working in this case and the harm is no one could anticipate obviously what a lien would do Let's assume for purposes of argument we don't agree with your structural argument. Then isn't that relevant that there was no objection? There was no There was an objection your honor. Well about the brandishing issue. That wasn't contested at the sentencing hearing was it? No not in the sense that there was not a request for a hearing or evidence to be put on beyond the objection that was placed on the record but that would be true of any of these cases that have been presented by the I don't know if there was no evidence whatsoever of brandishing I would think that defense counsel would stand up and say hey your honor you can't there was no evidence of brandishing here and it's inappropriate to sentence seven years on that That's certainly a possibility that could have been done but in this particular case the objection was raised which preserved the argument at the time the law was Harris and one of the interesting things that Mr. Zosmer has kind of glossed over is this notion of stare decisis and whether this evolution the courts change all the time. That evolution is an enlightened evolution. I submit that the transfer of this idea that due process applies throughout from pre-Apprende from Apprende to Booker and now to the piercing of stare decisis with Alene and Harris is significant. It's a recognition that due process and the fairness and integrity of the system has to be applied all the way throughout. So if you're going to charge a particular offense and you end up getting the jury's verdict no one questions that unless there's issues of sufficiency but if you never charge it and it's never presented that seems to work a twisted sense of justice especially in a case where the more innocent man, my client was acquitted of the intimidation charges doesn't get the opportunity and the benefit of going back to the sentencing court and say like the government has said with the other two Alene applies five years only and that's really fundamentally what's going on here. Mr. Zosmer, would you mind if I ask Mr. Zosmer another question? Not at all, Your Honor. May I step back then? Yes, thank you. Mr. Zosmer, isn't there a problem with the idea of our looking back at the trial and saying oh, of course it was shown but defense counsel never knew it was an issue. So defense counsel never had the opportunity at trial to challenge or contest the brandishing evidence or never knew it had anything to do with anything and therefore wasn't able to properly defend his client against the fact that brandishing was going to be significant. Isn't there a real problem with us going back and reinventing or recreating what happened in a trial based upon a one-sided view? Two answers to that, Your Honor. First of all it was relevant during the proceedings for the reasons Judge Chigaris was just referring to in his question. Brandishing was an issue. The government had to prove it by a preponderance at sentencing. It was always going to be on the table. But not beyond a reasonable doubt. In the defense, you know, you could give up when it was preponderance but it was beyond a reasonable doubt you might have put forth a little more effort and undermined it a little bit more. Well, the second answer is that you couldn't do it in this case given the nature of the evidence. And that's what harmless and plain error inquiry gets to. Is that what then we as a review court, well could you do it? Could you not do it? How relevant was it? Is that what we're supposed to be doing? Your Honor, it's answered explicitly in Cotton. It's exactly I'm sorry, I'm on a broken record. No, you're absolutely right. But the Supreme Court did the same thing and it said in the opinion, I think it's unanimous went and looked at specific quantities of cocaine and said sure, they could have argued it, but they weren't going to win and Chief Justice Rehnquist at the end of that opinion says, what would offend the interest of justice and all that other language. Is to make them have to go through it all over again. No, he says what would offend the interest of justice is to give them a lesser sentence than they deserve based on the quantity of drugs that they indisputably have. So that's the answer. Thank you. All right. Cases well argued were taken under advisement as the clerk of recess court.